# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SOUTHERN DIVISION

| | |
|---|---|
| **HILL PHOENIX, INC.,**<br>   **Plaintiff,**<br><br>   v.<br><br>**CLASSIC REFRIGERATION SOCAL, INC. et al.,**<br>   **Defendants.** | **Case No.: 8:19-cv-00695-DOC-JDE**<br><br><br>**ORDER RE: PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |

Before the Court is Plaintiff Hill Phoenix, Inc.'s ("Plaintiff") Motion for Partial Summary Judgment ("Motion") (Dkt. 121), accompanied by a supporting Memorandum (Dkt. 121-1). Having reviewed the parties' moving papers and considered their oral arguments, the Court GRANTS IN PART AND DENIES IN PART Plaintiff's Motion.

## I. Background

### A. Facts

The following facts are drawn from Plaintiff's First Amended Complaint ("FAC") (Dkt. 101); the Counterclaims of Defendants David Rogers ("Rogers") and Classic Refrigeration SoCal, Inc. ("Classic") ("Counterclaims") (Dkt. 104); and Plaintiff's Memorandum in support of the instant Motion. Plaintiff Hill Phoenix, Inc. is a retail refrigeration company, and operates an aftermarket services group ("AMS Group") as part of its business. FAC ¶ 7. Defendant Rogers first began working for Plaintiff in August 2014 as a project manager, and later accepted a July 11, 2016 written offer to work as the General Manager of the AMS Group. Countercls. ¶¶ 8-9. On July 11, 2016, Plaintiff also made a written employment offer to Defendant Thomas Lowe ( "Lowe"). FAC ¶ 13. These offers required Defendants Rogers and Lowe to agree to the Dover Corporation's[1] Code of Business Conduct and Ethics ("Code of Conduct"). *Id.* ¶¶ 12-13. The Code of Conduct provides that employees must use their business devices for business purposes; protect or encrypt sensitive business information; limit disclosure of confidential information; and avoid conflicts of interest. *Id.* ¶ 15. Defendants Rogers and Lowe were also prohibited, during and after their employment, from using or disclosing any of Plaintiff's confidential information or trade secrets, which the employment agreements defined at length. *Id.* ¶¶ 17-18.

In December 2018, while still employed by Plaintiff, Defendant Rogers and Mr. Travis VanderLoon[2] formed a new company called Tyler Refrigeration SoCal LLC, now known as Classic Refrigeration SoCal, Inc. ("Classic"), a defendant in this action. *Id.* ¶ 24; *see also id.* ¶¶ 31, 38. Defendants Rogers and Lowe left their employment with Plaintiff on January 3, 2019 and March 14, 2019, respectively, and on March 19, 2019, the Articles of Incorporation for Tyler Refrigeration SoCal were filed with the California Secretary of State. *Id.* ¶¶ 25-26.

---

[1] Plaintiff being "an indirect subsidiary of Dover Corporation." FAC ¶ 13.
[2] Formerly a defendant in this action, but dismissed by stipulation on October 17, 2019 (Dkt. 112).

Plaintiff alleges Defendants misappropriated trade secrets learned during their employment with Plaintiff to start their new business. *Id.* ¶ 27. For purposes of this Motion, Plaintiff claims six trade secrets were misappropriated: (1) a customer list, including names and phone numbers, of over 1500 entries; (2) a "Customer Master Location List" with "detailed information about specific stores," which Plaintiff estimates would take at least a year to compile; (3) a "Wage Matrix with confidential wage and hour and margin information"; (4) a "Contract Sales/Change Order with very detailed pricing information for an important customer"; (5) "very detailed job costing templates"; and (6) an "Installation Proposal/Contract" with confidential information regarding a bid for one of Plaintiff's customers. Mem. at 4-5. Additionally, many of Plaintiff's employees have since left to work for Defendant Classic. FAC ¶ 30.

Defendant Rogers alleges that on February 7, 2019 (after leaving Plaintiff's employment), he received an email from Plaintiff's employee Mr. Paul Sindoni about his (Rogers's) 2018 bonus. Countercls. ¶ 18. Mr. Sindoni complimented Defendant Rogers's performance and told Defendant Rogers that Plaintiff's board was in the process of approving the 2018 bonuses. *Id.* Defendant Rogers has not been paid this bonus, although the other twenty-eight employees eligible for bonuses received them. *Id.* ¶¶ 19-20.

**B.  Procedural History**

As relevant to this Motion, Plaintiff filed its First Amended Complaint (Dkt. 101) on September 20, 2019. The FAC brings the following eight causes of action:

(1) breach of contract;

(2) violation of the Defend Trade Secrets Act;

(3) violation of the California Uniform Trade Secrets Act;

(4) violation of the Comprehensive Computer Access and Fraud Act;

(5) breach of fiduciary duty;

(6) breach of the duty of loyalty;

(7) trademark infringement; and

(8) violation of California Business and Professions Code section 17200.

*See generally* FAC. Defendants filed an Answer to the FAC on October 4, 2019 (Dkt. 104). Along with the Answer, Defendants Classic and Rogers brought the following twelve counterclaims:

    (1) failure to timely pay unpaid wages due at time of separation, in violation of California Labor Code section 202(a);

    (2) waiting time penalties pursuant to California Labor Code section 203;

    (3) failure to provide complete and accurate wage statements, in violation of California Labor Code section 226;

    (4) failure to provide COBRA notice, in violation of 26 U.S.C. § 4980;

    (5) breach of contract;

    (6) breach of the covenant of good faith and fair dealing;

    (7) promissory estoppel;

    (8) unfair business practices, in violation of California Business and Professions Code section 17200;

    (9) retaliation, in violation of California Labor Code section 98.6(a);

    (10) intentional infliction of emotional distress;

    (11) intentional interference with prospective economic relations; and

    (12) negligent interference with prospective economic relations.

*See generally* Countercls.

On February 3, 2020, Plaintiff brought the instant Motion (Dkt. 121), seeking summary judgment on its trade secrets and contract claims, as well as on Defendants' first, second, third, fifth, seventh, eighth, eleventh, and twelfth Counterclaims. On February 18, 2020, Defendants filed an Opposition (Dkt. 134), and Plaintiff submitted its Reply (Dkt. 153) on February 28, 2020.

**II.    Legal Standard**

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is to be granted cautiously, with due respect for a party's right to have

its factually grounded claims and defenses tried to a jury. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A court must view the facts and draw inferences in the manner most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1992); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1161 (9th Cir. 1992). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial, but it need not disprove the other party's case. *Celotex*, 477 U.S. at 323. When the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out that the non-moving party has failed to present any genuine issue of material fact as to an essential element of its case. See *Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990).

Once the moving party meets its burden, the burden shifts to the opposing party to set out specific material facts showing a genuine issue for trial. *See Liberty Lobby*, 477 U.S. at 248–49. A "material fact" is one which "might affect the outcome of the suit under the governing law." *Id.* at 248. A party cannot create a genuine issue of material fact simply by making assertions in its legal papers. *S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc.*, 690 F.2d 1235, 1238 (9th Cir. 1982). Rather, there must be specific, admissible evidence identifying the basis for the dispute. *See id.* The Court need not "comb the record" looking for other evidence; it is only required to consider evidence set forth in the moving and opposing papers and the portions of the record cited therein. Fed. R. Civ. P. 56(c)(3); *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001). The Supreme Court has held that "[t]he mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for [the opposing party]." *Liberty Lobby*, 477 U.S. at 252.

**III. Discussion**

Plaintiff has moved for summary judgment on its trade secrets claims (under both California and federal law) and breach of contract claim. Plaintiff also seeks summary judgment against several of Defendants' counterclaims. The Court addresses each claim and counterclaim in turn.

### A. Plaintiff's Trade Secrets Claims Are Inappropriate for Summary Judgment

As discussed above, Plaintiff alleges trade secret misappropriation with respect to six pieces of information: a customer list, customer master location list, wage matrix, sales order, job costing templates, and a confidential bid document (collectively, the "Alleged Trade Secrets"). Mem. at 4-5.

#### 1. Legal Standard

To succeed on a claim under the California Uniform Trade Secrets Act ("CUTSA"), three elements must be proved: (1) the plaintiff's possession of a trade secret; (2) the defendant's misappropriation of said trade secret, i.e., wrongful acquisition, disclosure, or use thereof; and (3) that the defendant's misappropriation caused or threatened damage to the plaintiff. *Integral Dev. Corp. v. Tolat*, 675 F. App'x 700, 702 (9th Cir. 2017) (citing *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 220 (2010)). The Defend Trade Secrets Act ("DTSA") presents a similar standard, requiring "plaintiff's ownership of the trade secret; defendant's misappropriation of the trade secret; and damage to the plaintiff caused by the misappropriation." *Johnson Controls, Inc. v. Therma, LLC*, No. SA CV 18-00636 AG (KESx), 2018 WL 6133674, at *4 (C.D. Cal. Aug. 17, 2018).

Under the CUTSA:

> "Trade secret" means information, including a formula, pattern, compliation, program, device, method, technique, or process, that:
> (1) Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and
> (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Cal. Civ. Code § 3426.1(d). The DTSA uses a very similar definition. *See* 18 U.S.C. § 1839(3). "Misappropriation" obtains when a person acquires the trade secret through improper means, or when they disclose or use the trade secret knowing or having reason to know that it was acquired through improper means. *See* 18 U.S.C. § 1839(5); Cal. Civ. Code § 3426.1(b).

"Improper means" is defined to include "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means," but excludes reverse engineering and independent derivation. 18 U.S.C. § 1839(6); Cal. Civ. Code § 3426.1(a).

### 2. Discussion

The first element of a trade secrets claim requires that a plaintiff actually possess a trade secret. Here, Plaintiff argues that this element is satisfied because the Alleged Trade Secrets were kept confidential and have independent economic value—that, for example, the Alleged Trade Secrets could save a competitor the work of cold calling prospective clients, or could help a competitor undercut Plaintiff's bids. Mot. at 5-6.

Defendants, however, present declarations from longtime workers in the refrigeration industry disputing that any of the Alleged Trade Secrets are in fact eligible for protection as trade secrets. Defendants argue, for example, that customer contact information is "easily obtained" through LinkedIn or "publicly-available business phone numbers." Opp'n at 6. Defendants also offer declarations which call into question whether the customer list was subject to reasonable efforts to maintain its secrecy. *E.g.*, Declaration of David R. Tuttle ¶¶ 9-10 ("Tuttle Declaration") (Dkt. 138). Similarly, Defendants assert that the remaining items in the Alleged Trade Secrets are "not proprietary or unique," or are otherwise "known to all with significant experience in the industry." Opp'n at 7. And, again, the declarations offered by Defendants suggest that Plaintiff's Alleged Trade Secrets are in fact non-confidential forms and templates, and/or matters of public record. *See, e.g.*, Tuttle Decl. ¶¶ 14-21.

On the record currently available, then, the Court finds that a genuine dispute of material fact exists as to whether Plaintiff possesses a trade secret. Because this is fundamental to a trade secrets claim (i.e., there can be no finding of misappropriation or damages if no trade secret exists in the first place), the Court need not consider the remaining elements of Plaintiff's trade secrets claims. The Court finds that Plaintiff's claims under the DTSA and CUTSA are inappropriate for summary judgment and are properly a matter for a jury to resolve.

The Court accordingly DENIES summary judgment on Plaintiff's trade secrets claims.

B.  **Plaintiff's Breach of Contract Claims Are Inappropriate for Summary Judgment**

1.  **Legal Standard**

Under California state law, breach of contract has four elements: "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011) (citing *Reichert v. Gen. Ins. Co.*, 68 Cal. 2d 822, 830 (1968)).

2.  **Discussion**

Plaintiff argues that Defendants Rogers and Lowe's employment contracts prohibited them "from disclosing any trade secrets or other confidential materials." Mem. at 14. Their agreements define "confidential information" as

> information which is of value to HP [Hill Phoenix] because it is not generally known in the industry, and includes, but is not limited to, such information related to: (a) the tooling, equipment, and choice of machinery involved in the manufacturing of systems; (b) scientific and technical information, ideas, discoveries, designs, improvements, processes, procedures, software, and formulas; (c) the names, buying habits, or practices of any of HP's customers; (d) HP's marketing methods, business plans and related data; (e) the names of any of HP's vendors or suppliers; (f) the costs, prices, or discounts HP obtains or has obtained or at which it sells or has sold its products or services; (g) compensation paid to employees or other terms of employment; and, (h) all other know-how and other such information not generally known to the public.

Hill Phoenix Emp. Agreement (Dkt. 124-1, Ex. A). That is, Plaintiff intends that even information that does not meet the legal definition of a trade secret should still be subject to the confidentiality provisions of its employment agreement. Mem. at 15. The agreement requires that the employee, both during and after their employment, "will not use, disclose or communicate to any person, firm, or corporation . . . any confidential information I learn in the

course and scope of employment with HP." Hill Phoenix Emp. Agreement (Dkt. 124-1, Ex. A). According to Plaintiff, Defendants Rogers and Lowe breached their contractual obligation to protect Plaintiff's confidential information.

Defendants disagree, disputing whether a contract was ever formed, whether Plaintiff performed under the employment contract, and whether Defendants breached any confidentiality obligation.

***Contract formation.*** There is no genuine dispute of material fact that Defendants Rogers and Lowe formed valid contracts with Plaintiff. Defendant Rogers has admitted as much—as his counsel, in a letter to Mr. Sindoni, wrote that prior to his departure, "Mr. Rogers was employed by the Company [i.e., Hill Phoenix] pursuant to a written agreement . . . [and] that Mr. Rogers performed his job duties pursuant to that employment agreement exceedingly well." Ghassemian Letter at 7 (Dkt. 121-15). The Court will not entertain Defendant Rogers's attempt to bring a counterclaim under his employment agreement with Plaintiff while simultaneously denying its existence or validity.

As for Defendant Lowe, Plaintiff presents an offer letter and employment agreement, both bearing Defendant Lowe's digital signature, as well as a DocuSign "Certificate of Completion" for Defendant Lowe's offer letter. Dkt. 65-6, 65-7. The DocuSign certificate, moreover, indicates that the digital signature was linked to "David Lowe" and the email address "david.lowe@hillphoenix.com," signed at 3:09:02 p.m. on July 22, 2016. Dkt. 65-7. Defendants respond that Defendant Lowe and others do not recall this agreement, and that a computer forensics expert was unable to verify the digital signature. Opp'n at 11-12.

Defendant Lowe, however, makes no attempt to explain why these documents bear his signature and apparently originate from his email address. Lapses of memory regarding paperwork nearly four years old do not overcome the evidence presented by Plaintiff—nor does an "inconclusive" forensic analysis of the failed cryptographic verification associated with the DocuSign. *See* Declaration of Doris Little ¶¶ 6-7 ("Little Decl.") (Dkt. 141). As a result, Defendant Lowe's evidence does not clear the "scintilla" threshold needed to establish a genuine dispute of material fact.

The Court therefore finds that Plaintiff has established the existence of valid contracts with Defendants Rogers and Lowe.

***Plaintiff's performance.*** Plaintiff argues that it "performed under its contracts with Lowe and Rogers, having employed them pursuant to the terms set forth this those [sic] agreements and having paid them their annual salaries." Mem. at 16. Defendants respond that a genuine dispute of material fact exists because Plaintiff "failed to pay Rogers his earned bonus in the face of his great job performance." Opp'n at 13.

With respect to Defendant Lowe, then, Defendants raise no challenge to Plaintiff's performance under the contract. The Court will take this element as admitted with respect to Defendant Lowe, and thus need only consider whether Plaintiff performed under its agreement with respect to Defendant Rogers.

Defendant Rogers's signed offer letter provides that "[y]our bonus opportunity will continue to be 30% of Annual Base Salary. The annual bonus is discretionary, and is based on your individual and Hillphoenix [sic?] performance. This bonus target is also tied to this new position and will be adjusted if no longer in the position." Rogers Offer Letter at 5 (Dkt. 121-3, Ex. 1).

According to Plaintiff, "Rogers left his position before any alleged bonus was calculated, and . . . that bonus was tied to the position Rogers left"—and therefore that Defendant Rogers was not entitled to receive a bonus under his contract. Mem. at 21. Defendant Rogers offers a competing interpretation, noting that this provision "does not indicate that Rogers still had to be employed on a certain date to receive the bonus." Opp'n at 14. Defendant Rogers further notes that, after he left Plaintiff's employment, current Hill Phoenix employee Mr. Sindoni "sent Rogers an email acknowledging that a bonus was still due and owing to Rogers." *Id.* at 15. The parties further dispute whether Defendant Rogers's bonus was calculable while he was still employed: Defendant Rogers asserts that the bonus could have been calculated "as of January 3, 2019," while his last day of work was January 18, 2019, Opp'n at 15, whereas Plaintiff claims that "it would have been impossible to calculate a discretionary bonus at the time Rogers quit," Reply at 15. Defendant Rogers also argues that, according to Mr. Sindoni's testimony, "other

-9-

employees had left the company yet still received their bonuses," Opp'n at 20, adding a further interpretive difficulty to the plain text of the contract.

In light of these significant disputes, the Court finds summary judgment improper as to Plaintiff's performance under the contract. There is first the factual issue of whether Defendant Rogers's bonus could have been calculated while he was still employed, and then a knot of interpretive questions—e.g., whether this purported *calculability* entails Defendant Rogers's *eligibility* for the bonus. The Court also finds that the current record is inadequate to independently interpret the contract, as the Court has insufficient evidence available to account for Plaintiff's general course of performance with respect to bonus provisions or industry norms on bonuses.

Because there is a genuine issue of material fact as to whether Defendant Rogers was entitled to a bonus, the Court will not grant summary judgment on Plaintiff's contract claim with respect to Defendant Rogers.

***Defendants' breach.*** The Court need not address the element of breach with respect to Defendant Rogers; the following discussion will therefore only pertain to Defendant Lowe.

Plaintiff asserts that, even if he did not misappropriate Plaintiff's trade secrets, Defendant Lowe violated his obligation to protect confidential information. Mem. at 17. The confidentiality provision, however, excludes information generally known in the industry. Hill Phoenix Emp. Agreement (Dkt. 124-1, Ex. A). And as discussed above with respect to Plaintiff's Alleged Trade Secrets, the parties disagree as to whether this information is publicly available and/or generally known in the refrigeration industry. This disagreement over a material fact precludes summary judgment on this claim.

In sum, then, the Court finds that Defendants Rogers and Lowe entered into valid contracts, and that Plaintiff performed under its contract with respect to Defendant Lowe. The Court DENIES summary judgment on all the other elements of Plaintiff's breach of contract claims against Defendants Rogers and Lowe.

### C. Counterclaims

Plaintiff next seeks summary judgment on several of Defendants Rogers and Classic's counterclaims. The Court will address each of these in turn.

#### 1. Defendant Rogers's Unpaid Wages Counterclaim Is Inappropriate for Summary Judgment

As Plaintiff observes, this counterclaim "is premised on an allegedly earned bonus." Mem. at 18. In the discussion of the breach of contract claim above, the Court found a genuine dispute of material fact as to whether Defendant Rogers is owed this bonus under his contract. Here, as there, this factual dispute necessitates that the Court DENY summary judgment on the unpaid wages counterclaim.

#### 2. Summary Judgment is Warranted Against Defendant Rogers's Counterclaim for Waiting Time Penalties

The California Labor Code provides, in relevant part, as follows:

> If an employer willfully fails to pay . . . any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days.

Cal. Lab. Code § 203(a). California courts, however, have ruled that an employer's "good faith belief in a legal defense will preclude a finding of willfulness." *Armenta v. Osmose, Inc.*, 135 Cal. App. 4th 314, 325 (2005) (citing *Barnhill v. Robert Saunders & Co.*, 125 Cal. App. 3d 1, 8-9 (1981)).

As discussed above, the parties disagree as to whether Defendant Rogers is owed a bonus under the contract. Moreover, the Court cannot conclude, on the present record, that Plaintiff's position in that disagreement is in bad faith, and Defendant Rogers's accusations of retaliation do not surmount the "scintilla" threshold for summary judgment. As such, the Court GRANTS summary judgment against the counterclaim for waiting time penalties.

### 3. Defendant Rogers's Counterclaim for Accurate Wage Statements Is Inappropriate for Summary Judgment

This counterclaim is also predicated on whether Plaintiff owes Defendant Rogers a bonus, the lack of which constitutes the purported inaccuracy in the wage statement Plaintiff provided to Defendant Rogers. Again, as the parties have a genuine dispute over whether Plaintiff owes Defendant Rogers a bonus, summary judgment must be DENIED for this counterclaim.

### 4. A Genuine Issue of Material Fact Precludes Summary Judgment on the Breach of Contract Counterclaim

Defendant Rogers's breach of contract counterclaim is premised on Plaintiff's purported failure to pay his bonus. The genuine dispute of material fact over the bonus requires the Court to DENY summary judgment on this counterclaim.

### 5. Summary Judgment Is Appropriate Against Defendant Rogers's Counterclaim for Promissory Estoppel

To the extent Defendant Rogers bases his counterclaim for promissory estoppel on "the terms of the express written employment agreement" and Plaintiff's course of performance thereunder, *see* Countercls. ¶¶ 87-91, Defendant Rogers is actually alleging a breach of contract, which the Court has addressed above.

Defendant Rogers also argues that, after he left his job with Plaintiff, he received an email from Mr. Sindoni, which said, "Bonuses get approved with the board over the next couple of weeks. Once they are, I will send over a document to sign for us to release the funds." Opp'n at 23. However, according to Mr. Sindoni—which representation Defendant Rogers does not dispute—Defendant Rogers "did not return the signed agreement." Declaration of Paul Sindoni ¶ 16 (Dkt. 121-11). Because Defendant Rogers never took the action upon which the release of funds was conditioned, he cannot have reasonably relied on the funds being released.

The Court thus GRANTS summary judgment against Defendant Rogers's counterclaim for promissory estoppel.

### 6. Summary Judgment is Inappropriate as to Defendant Rogers's Retaliation Counterclaim

Defendant Rogers bases his retaliation counterclaim under California Labor Code section 98.6 on three alleged actions by Plaintiff: refusal to pay the allegedly owed bonus, allowing his medical insurance to lapse, and filing the instant lawsuit. Countercls. ¶¶ 96-99.

Section 98.6 provides that "[a] person shall not discharge *an employee* or in any manner discriminate, retaliate, or take any adverse action against *any employee or applicant for employment* because the *employee or applicant* engaged in any conduct" protected under the Labor Code. Cal. Lab. Code § 98.6 (emphasis added). Other district courts have interpreted this language to require the employee to have been employed at the time the alleged discrimination occurred. *See, e.g.*, *Fenters v. Yosemite Chevron*, No. CV-F-05-1630 OWW/DLB, 2009 WL 4928362, at *6 (E.D. Cal. Dec. 14, 2009) (finding dismissal appropriate because the alleged retaliation occurred after the plaintiff's resignation); *OptiStreams, Inc. v. Gahan*, No. CVF050117RECSMS, 2005 WL 3309589, at *4 (E.D. Cal. Dec. 6, 2005) (holding section 98.6 applies by its terms "only to actions that employers take against 'employees' or 'applicants,' not former employees").

Therefore, because Defendant Rogers was no longer Plaintiff's employee by the time he had left and started his own company (the alleged basis for retaliation, *see* Countercls. ¶ 95), it might be the case that Plaintiff cannot have retaliated against him within the meaning of California Labor Code section 98.6. But, as stated above, there are genuine questions of material fact as to whether Defendant Rogers's bonus was (1) calculable and (2) owed to Defendant Rogers while he was still working for Plaintiff—which, if so, would present a reasonable claim that Plaintiff took an adverse action against a current employee, by withholding a bonus to which he became entitled while still an employee.

Given these genuine issues of material fact, the Court DENIES summary judgment against Defendant Rogers's counterclaim for retaliation.

### 7. Defendants Rogers and Classic's Counterclaims for Intentional and Negligent Interference with Economic Advantage

According to Defendants Rogers and Classic, Plaintiff is liable for intentional and negligent interference with economic advantage because (1) Plaintiff filed this lawsuit; (2) Plaintiff's "employees have been spreading rumors about Classic and its principals," and (3) Plaintiff "has sent copies of this lawsuit to Classic's customers, telling the customers that Rogers and other Classic principles [sic] will soon be going to jail." Countercls. ¶¶ 42, 117, 127.

To the extent this counterclaim is predicated on the filing of the instant action, the counterclaim is precluded by the litigation privilege codified in California Civil Code section 47(b). The wide sweep of section 47(b) has been interpreted to bar actions for "interference with contract and prospective economic advantage." *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal 3d 1118, 1132 (1990). Because the filing of this lawsuit is a "judicial proceeding," section 47(b) privileges Plaintiff against these counterclaims.

As for the statements Plaintiff's employees have allegedly made to others, these counterclaims are foreclosed by the *Noerr-Pennington* doctrine. As originally articulated by the Supreme Court, the doctrine holds "that the First Amendment Petition Clause immunizes acts of petitioning the legislature from antitrust liability." *EcoDisc Tech. AG v. DVD Format/Logo Licensing Corp.*, 711 F. Supp. 2d 1074, 1081 (C.D. Cal. 2010) (citing *United Mine Workers v. Pennington*, 381 U.S. 657 (1965), and *E. R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961)). The doctrine has since expanded beyond the antitrust context; as the Ninth Circuit has held, the *Noerr-Pennington* doctrine applies to state law claims for intentional interference with prospective economic advantage—and indeed "applies equally in all contexts." *EcoDisc*, 711 F. Supp. 2d at 1081 (citing *Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1007 (9th Cir. 2008), and *White v. Lee*, 227 F.3d 1214, 1231 (9th Cir. 2000)). Additionally, "[c]onduct incidental to a lawsuit," such as a pre-suit demand letter, is within the *Noerr-Pennington* doctrine's protection. *Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1007 (9th Cir. 2008).

Here, the Court finds that sending "copies of this lawsuit" and discussing it are within the ambit of conduct incidental to the suit. Having filed suit, Plaintiff's employees have allegedly shown "copies of the TRO and the Complaint" to another company's vice president, Opp'n at 24; the Court sees no legal basis to penalize them for doing so. (Defendant Rogers has also testified that some of Plaintiff's employees "have been spreading rumors about defendants going to Jail" [sic], Opp'n at 24, but the Court finds this mere assertion insufficient to meet the "scintilla" standard for summary judgment.) And Defendants have not shown that Plaintiff's lawsuit and related conduct are "so baseless" as to render this action a "sham" (i.e., objectively baseless, and initiated to interfere with a competitor's business), and thus excepted from the protection of the *Noerr-Pennington* doctrine.

The Court therefore finds that all of the conduct underlying Defendants' interference counterclaims are protected by either state or federal privilege, and accordingly GRANTS summary judgement against both counterclaims.

**IV.   Disposition**

For the reasons set forth above, the Court GRANTS IN PART AND DENIES IN PART Plaintiff's Motion for Partial Summary Judgment. In particular, the Court rules as follows:

(1) As to Plaintiff's first cause of action, for breach of contract, summary judgment is DENIED; although—
   a. the Court finds no genuine issue of material fact as to the existence of valid contracts between Plaintiff and Defendants Rogers and Lowe, and thus GRANTS summary adjudication on this element; and
   b. the Court finds no genuine issue of material fact as to Plaintiff's performance with respect to Defendant Lowe, and thus GRANTS summary adjudication on this element.
(2) As to Plaintiff's second and third causes of action, for violation of the Defend Trade Secrets Act and the California Uniform Trade Secrets Act, respectively, summary judgment is DENIED.

(3) As to Defendant Rogers's first counterclaim, for unpaid wages, summary judgment is DENIED.

(4) As to Defendant Rogers's second counterclaim, for waiting time penalties, the Court GRANTS Plaintiff's Motion for Partial Summary Judgment.

(5) As to Defendant Rogers's third counterclaim, for accurate wage statements, summary judgment is DENIED.

(6) As to Defendant Rogers's fifth counterclaim, for breach of contract, summary judgment is DENIED.

(7) As to Defendant Rogers's seventh counterclaim, for promissory estoppel, the Court GRANTS Plaintiff's Motion for Partial Summary Judgment.

(8) As to Defendant Rogers's eighth counterclaim, for retaliation, summary judgment is DENIED.

(9) As to Defendants Rogers and Classic's eleventh and twelfth counterclaims, for intentional and negligent interference with prospective economic relations, the Court GRANTS Plaintiff's Motion for Partial Summary Judgment.

DATED:   March 15, 2020

*David O. Carter*

DAVID O. CARTER
UNITED STATES DISTRICT JUDGE